IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> v. <br><br> RHODES COLLEGE, <br><br> Defendant. | Docket No. 2:19-cv-02336-JTF-tmp |

**DEFENDANT'S OBJECTION TO
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

COMES NOW Rhodes College (hereafter "Defendant") and files this Objection to Plaintiff's Application for a Temporary Restraining Order ("TRO") and Preliminary Injunction, and shows as follows:

Introduction

Plaintiff's Application seeks a TRO and preliminary injunction to enjoin Defendant from "refusing to confer his degree in May 2019 as scheduled." However, that event already passed – Defendant's graduation ceremonies occurred on May 11, 2019, almost three weeks before Plaintiff filed suit, and almost two weeks after Defendant's neutral appeals board affirmed Plaintiff's expulsion on April 29, 2019 for sexually assaulting a fellow student. Plaintiff simply waited too long to seek relief related to his graduation. Moreover, Plaintiff did not fulfill Defendant's requirements to qualify for graduation during the spring 2019 semester, nor could he fulfill them over the summer, so there is no immediacy to the relief sought. Simply put, Plaintiff was expelled for committing a sexual assault, as determined by a neutral hearing board and affirmed by a neutral appeals panel, and thus he is not eligible to receive a diploma from Rhodes College.

Plaintiff's request to usurp and undermine an educational institution's ability to determine upon whom it can confer its academic degree – at a time when there is no significant or established evidence of wrongdoing – is misguided. Plaintiff's TRO request would turn the academic process on its head by removing institutional academic control and discretion with barely any evidentiary support. Indeed, the Court's June 6, 2019 TRO hearing is scheduled just a week after this litigation was served on May 30.

Plaintiff has not pleaded that he applied for graduate school that might require his degree to be conferred immediately, nor has he pleaded that he has lost any employment opportunities. In short, Plaintiff has pleaded no immediacy and no irreparable harm. Instead, he cavalierly seeks the ultimate relief of this case – degree conferral – on a preliminary basis without adequate justification or sufficient record evidence. As this Objection demonstrates, such a result would cause substantial harm to others and the public if Plaintiff's Application were granted. (See pages 4-8, infra.)

Accordingly, Defendant respectfully requests that the Court deny Plaintiff's Application.

Statement of Case

On May 29, 2019, John Doe (hereafter "Plaintiff") filed a Complaint, alleging that Defendant violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et. seq. Defendant denies these allegations in their entirety. Defendant is committed to ensuring a safe learning environment that supports the dignity of all members of its campus community and does not discriminate on the basis of sex or gender in its education programs or activities. To that end, Defendant does not tolerate sexual misconduct and has developed policies and procedures for the investigation and adjudication of sexual misconduct claims. Plaintiff's allegations are erroneous, and Defendant is confident that it will prevail in this litigation. In the short term, Plaintiff's circumstances do not justify the issuance of a preliminary injunction.

The Complaint filed by Plaintiff arises from an incident that took place on February 14, 2019, at a fraternity lodge on Defendant's campus. A female student reported to local law enforcement authorities that she was sexually assaulted at the fraternity lodge that night. She participated in various interviews, a rape kit, and a medical evaluation to support her report. Defendant was notified of the law enforcement report and, per policy, conducted its own independent investigation of the events surrounding the February 14, 2019, incident.

Upon completion of the independent investigation, Defendant convened a neutral Sexual Misconduct Hearing Board on April 17, 2019. The Hearing Board reviewed documentary and photo evidence and heard testimony from various witnesses. At the conclusion of the hearing, the Hearing Board determined that Plaintiff was responsible for non-consensual sexual penetration by a preponderance of the evidence, which is the widely-accepted standard for academic proceedings.[1] Plaintiff was given full appeal rights and participated in an appeal. The decision was then affirmed by a separate, neutral appeals board on April 29, 2019. As a result, Plaintiff was expelled from Defendant's institution and prohibited from visiting campus. Contrary to Plaintiff's assertion, there was evidence that Plaintiff committed a sexual assault. A nurse examiner at the rape crisis center noted physical evidence consistent with an assault, the victim identified him as a person who assaulted her, and Plaintiff admitted to being alone with the victim around the time of the alleged assault, among other factors.

Plaintiff now seeks an order on a preliminary basis to expunge his expulsion and either finish his classes or automatically receive his degree. Defendant strongly objects to this Application, as Plaintiff fails to demonstrate *any* requirement to justify a preliminary injunction.

---

[1] Campus proceedings are not subject to a criminal standard of proof, such as beyond a reasonable doubt, as no loss of liberty is at stake.

Legal Standard and Analysis

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. See Univ. of Texas v. Camenisch, 451 U.S. 390 (1981). Courts must balance four factors when considering a preliminary injunction: (1) whether Plaintiff has a likelihood of success on the merits; (2) whether Plaintiff would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). The Sixth Circuit has explained that the preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." Id.

Defendant addresses each of those factors below, as Plaintiff's application fails to establish why a preliminary injunction should be immediately granted. As stated in Leary, there are no "extraordinary" or "limited" circumstances here, beginning with the fact that Plaintiff has not pleaded any irreparable injury, whereas the harm caused to Defendant, the Rhodes community, and the public interest would be significant. He also has little likelihood of success on the merits. In short, Plaintiff fails to explain why his circumstances are extraordinary enough to justify a preliminary injunction.

    a) Plaintiff will not suffer irreparable injury.

A preliminary injunction is only appropriate where the irreparable injury is "actual and imminent," not merely remote or speculative. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); see also Dart Transit Co. v. Frasier, 2014 WL 3956725, at *4 (E.D. Mich. Aug. 13, 2014); Tucker Anthony Realty Corp., v. Schlesinger, 888 F.2d 969, 975 (2nd Cir. 1989). Further, irreparable harm must be actual, not theoretical. Dart at 4. Plaintiff has "the burden of establishing

a clear case of irreparable injury." Bd. of Educ. v. U.S. Dep't of Educ., 208 F. Supp. 3d 850, 860 (S.D. Ohio 2016).

Plaintiff has failed to demonstrate how he is currently suffering or will suffer irreparable harm without an immediate injunction. The graduation ceremony for degrees conferred in May 2019 has already taken place, and Plaintiff has not alleged a specific need for his degree right now, during schools' summer break. Plaintiff did not plead that he was applying for graduate school, so his academic future is not delayed or impacted by allowing this litigation to play out. Plaintiff has also not pleaded that his job prospects are harmed by his current lack of a diploma. To the contrary, Plaintiff has admitted that he would merely be "on the job market but for this expulsion." (Proposed TRO Order [Dk. 5], at 7). Moreover, he could always seek to transfer to a different college, as expelled students often do. Thus, there is no "clear case" for rushing to judgment on an undeveloped record for a preliminary injunction. Bd. of Educ., 208 F. Supp. 3d at 860.

Next, Plaintiff's alleged harm of potentially being labelled a "sexual predator" is illusory. Conferral of a degree does not address that concern; only the ultimate resolution of this litigation will. Moreover, Defendant has made no public announcement tying Plaintiff's name to the Hearing Board decision. Plaintiff's fear of being labelled as a "sexual predator" is hypothetical, would not be proliferated by Defendant, and could not be prevented by an injunction because some students already know his identity through no act of Defendant. The media attention Plaintiff has created by this litigation filing is much more likely to create student discussion about him, including on social media platforms, and affect his reputation in a way that Defendant never has done or could conceivably do. Defendant cannot infringe those theoretical students' First Amendment rights by preemptively seeking to prohibit their dialogue.

Thus, Plaintiff has not sufficiently alleged why an injunction is necessary or could lessen his harm, much less has he demonstrated an "irreparable" injury that justifies the issuance of the "extraordinary remedy" of a preliminary injunction. Leary, supra.

   b) Issuance of a preliminary injunction would cause substantial harm to others, and does not serve the public's interest.

1. Harm to the campus community

Plaintiff's analysis of harm selfishly only considers his desire to graduate, which would necessitate a return to campus since he did not fulfill all requirements for degree conferral. Plaintiff fails to consider the safety of other students on Defendant's campus. The sexual assault allegations in this case are serious and have already captured media attention. Upon information and belief, Plaintiff's identity is already known by some students on campus. Allowing Plaintiff back on campus, without a substantive determination of his innocence in advance, would be harmful to others in the campus community. Granting an injunction to Plaintiff on a paucity of evidence just a week after he filed suit would undermine the legitimacy of Defendant's Title IX processes and signal to victims of sexual misconduct that campus investigations are insufficient and susceptible to being quickly reversed, which would likely reduce the number of misconduct reports and make victims less likely to participate in Title IX investigations and campus hearings. This, in turn, would make victims of sexual misconduct less safe on campus.

2. Harm to Defendant

Ordering Defendant to confer a degree on Plaintiff based solely on Plaintiff's complaint allegations would also harm Defendant and tarnish its diploma. Plaintiff has not met the standards for conferral of a degree, as described in the Sworn Declaration of Milton Moreland, attached hereto as **Exhibit A**. Plaintiff's request for the Court to nonetheless confer a degree on him would

undermine the entire academic process by removing institutional control and discretion over its ultimate reward – its diploma – in contravention of the Supreme Court's academic deference doctrine. Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225, 106 S. Ct. 507, 88 L.Ed.2d 523 (1985); Bd. of Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 96, 98 S. Ct. 948, 55 L.Ed.2d 124 (1978). In Ewing, the Supreme Court identified the appropriate standard of review for Courts to employ when reviewing academic decisions to dismiss a student: "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." Id. at 225 n.11.[2] It would cheapen Defendant's degree for all other students if Defendant is unable to create and execute its own policies regarding students' coursework and non-coursework graduation requirements in the absence of substantial evidence of wrongdoing, which is simply not present here.

Plaintiff's argument related to taking final exams in three Spring 2019 courses is inapposite. Plaintiff did not complete all course requirements. (Moreland Decl., Para. 5.) Moreover, degree conferral is not dependent on coursework alone, and Plaintiff failed to comply in other material, required respects. (Id., Paras. 7-8, 10-12; see also subsection 3, below.) Finally, Plaintiff was expelled before the end of the semester, so the exams are moot. As a courtesy, Defendant had allowed Plaintiff to complete certain aspects of his Spring 2019 semester classes

---

[2] The Supreme Court in Ewing further concluded that Courts should show substantial deference to academic institutions' academic judgment:
> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

Id. at 225, 106 S. Ct. at 513; see also Youngberg v. Romeo, 457 U.S. 307, 323, 102 S. Ct. 2452, 2462, 73 L.Ed.2d 28 (1982).

after the adjudication of the Title IX charges and during his on-campus appeal. This courtesy was extended to mitigate the effect on Plaintiff if the decision was ultimately reversed. (Id., Para. 5.) However, it was not. That courtesy should not be used against Defendant as if none of its other graduation requirements deserved any weight. That would unduly undermine Defendant's academic standing and run contrary to the Supreme Court's academic deference doctrine.

3. Harm arising from second sexual assault case pending against Plaintiff

Significantly, these are not the only sexual assault charges against Plaintiff. A second student later alleged that Plaintiff sexually assaulted her one week prior to the sexual assault of the victim in this case. The other report was investigated (with Plaintiff's participation) but otherwise placed on hold, since the first case was proceeding towards an on-campus hearing. If Plaintiff were re-admitted to campus, Defendant would have an obligation to complete that second case as well. The public interest would absolutely not be served by allowing Plaintiff to prematurely re-enroll only to have a second sexual assault case pending against him.

Throughout the entirety of Defendant's investigation and Title IX proceedings, Plaintiff was afforded all rights under Title IX. At no time during the investigation or the hearing did Plaintiff allege any discrimination concerns. His first allegation of discrimination came in his Complaint, only after he was unhappy with the Hearing Board results. Plaintiff, and any other student dissatisfied with a Hearing Board result, should not be rewarded for filing litigation by receiving a quick-strike reversal without a sufficient evidentiary record. The public's interest is best served by allowing the factual record to be developed. Asking the Court to permit Plaintiff – who is alleged to have sexually assaulted two students – back into the Rhodes community to complete his degree requirements based on nothing but unsubstantiated assertions in a TRO filing is certainly against the public interest.

    c) <u>Plaintiff is not likely to succeed on the merits.</u>

One week after this litigation was filed, Plaintiff has not come close to establishing an evidentiary record of *any* error in Defendant's Title IX processes. See <u>Bd. of Educ.</u>, 208 F. Supp. 3d at 860 (Plaintiff has "the burden of establishing a clear case of irreparable injury"). He is ultimately unlikely to succeed on the merits, and that will play out over the course of this litigation. For now, Defendant will briefly address Plaintiff's allegations that supposedly touch on the merits of this case.

Plaintiff alleges that he would be successful under the "erroneous outcome" and "selective enforcement" standards for the evaluation of Title IX proceedings. This is inaccurate, as Plaintiff's analysis relies on statements about Defendant's processes, its thorough investigation and the neutral Sexual Misconduct Hearing Board that are erroneous, irrelevant and/or misconstrued.

Plaintiff's assertion that any alleged "procedural irregularity" would create sufficient articulable doubt to reverse the Hearing Board's finding is not the proper legal standard. To plead under erroneous outcome, Plaintiff must allege: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized, causal connection between the flawed outcome and gender bias. <u>Doe v. Miami Univ.</u>, 882 F.3d 579, 592 (6th Cir. 2018). Plaintiff analogizes his circumstances with those in <u>Miami Univ.</u>, but his alleged facts are not comparable. In <u>Miami Univ.</u>, the Court found, on a substantial evidentiary record, that there were inconsistent statements and discrepancies in the victim's testimony and the hearing panel's findings of fact, along with an erroneous definition of consent. Here, Plaintiff's allegations do not demonstrate any discrepancies in the witness testimonies or Hearing Board conclusions; he simply disagrees with the manner in which the Hearing Board chose to weigh evidence. And his alleged "procedural irregularities" rely on erroneous assumptions and his own misunderstanding

9

of the hearing and appeals processes for Defendant's Title IX proceedings. Thus, Plaintiff has not sufficiently pleaded an erroneous outcome.

To address the specific "procedural irregularities" alleged on pages 5-6 of Plaintiff's Application:

1) *"Rhodes' failure to require the participation of the alleged victim."*

   First, Defendant has no subpoena power to "require" participation by anyone. This is not a "procedural irregularity;" rather, it is ubiquitous with campus Title IX proceedings. Moreover, the female victim did participate in Defendant's investigation – she was interviewed and provided evidence – albeit not at the hearing.

2) *"Rhodes' failure to permit cross-examination … of the alleged victim."*

   Plaintiff's allegation is off base. Since the alleged victim did not testify during the campus proceeding, her testimony and her credibility were not at issue. See Doe v. Baum, 903 F.3d 575 (6th Cir. 2018). Defendant could not "require" her participation, but if she had participated, she would have been subject to cross-examination. (See Rhodes' published Title IX Procedures, Section VI.B.3. ("any person who offers testimony at the hearing must remain available to answer questions from the Board and both parties").)

3) *"The failure of the sexual misconduct hearing panel to base its decision on first-hand testimony." (See also No. 10 (conceptually the same objection).)*

   This assertion is nothing but baseless speculation. Testimony from various witnesses was considered by the Hearing Board. And the Board was permitted to rely on hearsay evidence, including but not limited to the type of contemporaneously-uttered hearsay that Courts are permitted to rely on. (E.g., Federal Rules of Evidence 803(1), (2), (3); see also

Rhodes' Title IX Procedures, Section VI.A.5. ("Legal rules of evidence or criminal or civil procedure will not apply at Formal Resolution Hearings").)

4) "*Rhodes' failure to charge … the female student.*"

and

5) "*Rhodes' failure to question [a female student] about the accusation that she participated in the alleged sexual assault.*"

These allegations of "irregularities" are again baseless. Defendant investigated all individuals involved in the incident. No female student was alleged to have committed a sexual assault. Plaintiff was accused of sexual assault. As such, a Hearing was held to determine whether Plaintiff was responsible for doing so.

6) *Despite one witness's testimony that no assault happened, "the hearing panel still found Plaintiff responsible." (See also No. 11 ("Rhodes' decision to give weight to the testimony of female students testifying to pure hearsay over the testimony of a male student with direct knowledge".)*

There are no "procedural irregularities" alleged here; Plaintiff simply misstates, and then disagrees with, the manner in which he perceived the Hearing Board to weigh evidence.

7) *"Rhodes' presentation of last-minute evidence at the hearing which was not part of the hearing packet" (See also No. 9 (conceptually the same objection).)*

First, Defendant did not "present evidence" at the hearing. It did not act as a prosecutor in any manner. Rather, the Hearing Board, as the neutral decision-maker, was entitled to review all relevant evidence in pursuit of determining the truth of what occurred. Further, Plaintiff was provided a copy of all evidence prior to the hearing. Defendant's published Title IX Procedures also granted the Hearing Board discretion on how to evaluate "last

minute" evidence. (Section VI.B.4. ("The Board may, in its discretion, exclude or grant lesser weight to last-minute information or evidence introduced at the hearing that was not previously presented for investigation by the Investigator").) Moreover, Plaintiff had full appeal rights under Defendant's Title IX procedures, which included a full opportunity to address any "last minute" evidence with the benefit of more time to develop an evidentiary rebuttal. (Id., Section VIII.A.2.) Plaintiff failed to do so, and thereby waived his right to have Defendant's appeals board consider any such argument.

8) *"Rhodes' reliance on inconclusive and unexplained medical evidence presented as medical proof that [the victim] was raped"*

Medical evidence was not "presented" at the hearing as "proof" of "rape." Medical evidence was made available for the Hearing Board to evaluate as it sought to find the truth. Again, Plaintiff simply misstates, and then disagrees with, the manner in which he perceived the Hearing Board to weigh evidence. Moreover, if Plaintiff took issue with such evidence, he had ample time to rebut it at the hearing and as part of the appeal process.

Moreover, Plaintiff's allegations of gender discrimination are not credible. There were never parallel allegations made against the female student that Plaintiff features so prominently in the Complaint. She was not alleged to have committed a sexual assault, as Plaintiff was. There is also no evidence that Defendant has brought a Title IX claim against any other male student under the current policy. Over the last several years, Defendant's Title IX cases have involved male and female students as both claimants and respondents. And as explained above, the "no cross-examination" point is inapposite since the alleged victim did not testify during the campus proceeding, so her credibility was not at issue. See Doe v. Baum. Defendant has no subpoena

power for a campus proceeding, and cannot compel a sexual assault victim, or any other witness, to testify.

In a selective enforcement claim, Plaintiff must demonstrate that an individual of the opposite sex was treated more favorably only because of her gender. Doe v. Cummins, 662 F. App'x 437, 452 (6th Cir. 2016). Plaintiff has alleged that a female student was similarly accused of sexual misconduct, but that statement is not accurate. There was no evidence presented during the investigation or hearing that any female student was accused of sexually assaulting the victim, thus no female student was similarly situated to Plaintiff. As such, any selective enforcement claim would fail for lack of evidence.

With respect to the new breach of contract argument filed yesterday, Plaintiff will not be successful on the merits. He alleges that Defendant (1) failed to consider Plaintiff's evidence and (2) failed to apply the preponderance of the evidence standard. To support his allegations, Plaintiff string-cites multiple preliminary injunction cases for various claims related to sexual misconduct investigations. However, *none* of those cases contain analogous situations. In the majority of the cited cases, the Court relied on a full evidentiary record, including various pleadings, hearings, and witness testimony, to determine whether the students' claims could succeed on the merits. Here, this case has only been pending for a week, and no evidentiary record has been developed.

Plaintiff specifically compares his circumstances with those in Ritter v. Oklahoma City University. In that case, the Western District of Oklahoma granted a preliminary injunction to the accused student because the university failed to provide an "equitable resolution of the complaint," finding that he was "entitled to more [due] process than [he] was afforded." To wit, the accused student was only provided "one meeting with the Title IX Coordinator" to "rebut the charges made against him;" there was no hearing or adjudicative process, and there was no questioning or cross-

13

examination of witnesses. 2016 WL 2659620 * 3 (W.D. Okla. May 6, 2016). In our matter, on the other hand, Plaintiff was provided an opportunity to meet with a Title IX investigator, audit those investigation interview notes before they were included in an investigation report, participate in a hearing before a neutral Hearing Board that included cross-examination of all witnesses and support from legal counsel, and an opportunity to appeal to a different, neutral appeals panel. Plaintiff lists several alleged process errors with regards to the Hearing, but those allegations have been shown to be erroneous throughout this Objection. Plaintiff simply disagrees with how the Hearing Board weighed certain evidence to reach its entirely-justified conclusion, and ignores that it was affirmed on appeal. There were no process errors, and as such Plaintiff could not be successful on the merits of a breach of contract claim.

Plaintiff's case of Doe. v. Univ. of Notre Dame, 2017 U.S. Dist. LEXIS 69645 (N.D. Ind. May 8, 2017) is also a helpful comparator. There, the plaintiff was expelled four weeks before graduation and promptly filed suit. Following two hearings and "a full-blown evidentiary hearing," id. at *2, the Court granted a preliminary injunction after finding that key evidence had been withheld entirely and that the plaintiff was not permitted to cross-examine his accuser's testimony (which are facts not present in our case). Id. at *21-*22. But here is the most interesting part: despite those due process errors, the Court entered the preliminary injunction *to allow the plaintiff to take his final exams*, to preserve the status quo, *while expressly ordering that his "degree can be withheld" until the Court could later decide the case on its merits*. Id. at *45. That matches our situation, with Defendant having permitted Plaintiff to take his exams to preserve the status quo, and matches Defendant's proposed outcome for Plaintiff's motion: no degree conferral.

Plaintiff was justifiably expelled and is not entitled to a Rhodes diploma. Accordingly, Plaintiff's motion should be denied. At this early point in the litigation, Plaintiff simply has not

developed any factual basis to carry his substantial burden to prove his entitlement to the "extraordinary remedy" he seeks. See Leary, 228 F.3d at 736.

## Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction in its entirety.

Respectfully submitted this 6th day of June, 2019.

>  */s/ James A. Haltom*
> James A. Haltom (BPRN 28495)
> Woods Drinkwater (BPRN 33838)
> NELSON MULLINS RILEY & SCARBOROUGH, LLP
> One Nashville Place, Suite 1100
> 150 Fourth Avenue North
> Nashville, TN 37219
> Phone: (615) 664 – 5339
> Fax: (615) 664 – 5399
> Email: james.haltom@nelsonmullins.com
> Email: woods.drinkwater@nelsonmullins.com
>
> Daniel A. Cohen
> Georgia Bar No. 173474
> *Pro hac vice* application pending
> Ashley A. Akins
> Georgia Bar No. 852607
> *Pro hac vice* application pending
> NELSON MULLINS RILEY & SCARBOROUGH LLP
> Atlantic Station / Suite 1700
> 201 17th Street, NW
> Atlanta, GA  30363
> Phone: (404) 322-6223
> Fax: (404) 322-6050
> Email: dan.cohen@nelsonmullins.com
> Email: ashley.akins@nelsonmullins.com
>
> *Counsel for Rhodes College*

## **CERTIFICATE OF SERVICE**

   I hereby certify that the foregoing was served on counsel of record by the Court's ECF system and by placing a true and accurate copy in the U.S. Mail, postage prepaid, to the following:

Brice Timmons
Megan Arthur
Black McLaren Jones Ryland &
Griffee PC
530 Oak Court Drive, Suite 360
Memphis, TN 38117

   Dated June 6, 2019.             */s/ James A. Haltom*
                                    **JAMES A. HALTOM**