IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

JOHN DOE,

    Plaintiff,

v.                                          Docket No. 2:19-cv-02336-JTF-tmp

RHODES COLLEGE.

    Defendant.

**PLAINTIFF'S SUPPLEMENTAL APPLICATION FOR
PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff John Doe (hereinafter "Plaintiff"), by and through the undersigned counsel, applies to this Court for preliminary injunctive relief supplemental to the relief that he has already sought in this cause. For grounds, Plaintiff would respectfully show as follows:

**I. STATEMENT OF THE CASE**

This application arises in the context of an action for violation of Title IX of the Civil Rights Act of 1964. Plaintiff is a senior at Rhodes College in Memphis, Tennessee, who is alleging that Defendant has violated his rights under Title 20 U.S.C. § 1681. Specifically, Plaintiff alleges that Defendant's decision to charge two male respondents while choosing not to charge a female student accused of participation in the same alleged sexual assault coupled with external pressure to enforce sexual misconduct policies against male students demonstrates discrimination against Plaintiff on the basis of his gender. (Compl. ¶¶ 48-63).

Plaintiff applied to this Court for a Temporary Restraining Order and Preliminary

Injunction seeking an order enjoining the enforcement of its expulsion and requiring the conferral of his degree. On June 14, 2019, this Court granted in part and denied in part Plaintiff's request for a temporary restraining order and set all remaining issues of preliminary injunctive relief for a hearing. This Court found that Defendant's decision not to require the participation or cross-examination of an alleged victim of a sexual assault in the Title IX hearing and the failure to charge a female student with the same offense despite her alleged role in the event, among other various factors, gave rise to a finding that Rhode College had discriminated against Plaintiff on the basis of his gender within the meaning of Title IX. (ECF 33 at pp. 7-10.)

Defendant raised several defenses to the issue of conferring the degree that this Court found sufficient to deny the conferral of the degree "at this time," presumably reserving a further determination on those issues for the preliminary injunction hearing. (Id. at 13.) The impediments alleged as to Plaintiff's graduation are as follows:

- That Plaintiff has not turned in at least one assignment;

- That Plaintiff's grades remain to be calculated; and

- That Plaintiff has another misconduct allegation that needs to be resolved. (Id.)

Plaintiff avers that he will not turn in the remaining assignment and that it should be factored in as a "0" into his grades. Plaintiff avers that the outcome of that assignment and course do not impact his graduation, only his religious studies minor. Plaintiff further avers that this Court's order enjoining his expulsion necessarily compels Defendant to treat him as any other student, calculate his grades, and enter them onto his transcript. This leaves only the issue of the second allegation of misconduct raised by Defendant, which is the issue raised in the instant supplemental application. Plaintiff avers that Defendant cannot pursue this claim without violating its own policies, several federal regulations by which it is bound, and Title IX itself and that it

should therefore be enjoined from pursuing this complaint or using it as a basis to deny Plaintiff the conferral of his degree.

## II. ADDITIONAL RELEVANT FACTS

Plaintiff incorporates and relies on all of this Court's findings from it's "Order Granting in Part and Denying in Part Plaintiff's Request for a Temporary Restraining Order." (ECF 33.) In addition, Plaintiff would state that the following facts are relevant to this proceeding:

1. On June 6, 2019, Defendant asserted that "[a] second student later alleged that Plaintiff sexually assaulted her one week prior to the sexual assault of the victim in this case.

2. Also, on June 6, 2019, Defendant asserted that the investigation and "placed on hold, since the first case was proceeding towards an on-campus hearing."

3. In support of this assertion, Defendant filed an affidavit with the Court stating:

    In addition to the academic criteria explained above, students are not entitled to graduate from Rhodes College while disciplinary processes are pending against them. Setting aside any questions about the Title IX matter currently before the Court, there is a second Title IX claim pending against plaintiff, which was placed on hold while the first Title IX matter was adjudicated. The second Title IX claim would need to be resolved before Plaintiff would be eligible to graduate. (ECF 24-1 ¶ 11.)

4. Rhodes College's Sexual Misconduct Policy, attached hereto as Exhibit 1, states, in pertinent part:

    Most investigations into **incidents of alleged Sex/Gender Discrimination and Sexual Misconduct will be completed within sixty (60) calendar days, excluding any appeal(s)**. The amount of time needed to investigate a Report or Claim will depend in part on the nature of the allegation(s) and the evidence to be investigated (e.g., the number and/or availability of witnesses involved), as well as the College's academic calendar. . .

    **Rhodes will make reasonable efforts to balance and protect the rights of the parties during any investigation commenced under the Policy.** Rhodes will respect the privacy of the parties and any witnesses in a manner consistent with the College's obligations to investigate the alleged incident, take

appropriate interim and/or corrective action, and comply with any discovery or disclosure obligations required by law. . .

**Rhodes will keep the parties reasonably informed of the status of the investigation. If it is determined that more time is needed for the investigation, Rhodes will communicate the additional estimated amount of time needed to complete the investigation.** (emphasis added)

5. This second Title IX complaint was brought by a woman who admitted to consensual sexual conduct with Plaintiff during the investigation and that she felt compelled to bring the complaint after learning of the allegation for which Plaintiff was expelled. The original complaint and investigative report compiled by Rhodes College are filed contemporaneously with this application under seal as "Exhibit 2 to Supplemental Application for Preliminary Injunctive Relief" and "Exhibit 3 to Supplemental Application for Preliminary Injunctive Relief."

6. This Title IX complaint was initiated on March 29, 2019 and, pursuant to Rhodes' Title IX policy and federal law, should have been completed, absent a written notification of an extension of time for good cause, no later than May 29, 2019.

7. Plaintiff intentionally waited to file the instant lawsuit until close of business on May 29, 2019 to ensure that no further Title IX processes that might be relevant to this lawsuit could be taken against him. Had Rhodes followed its policy, Plaintiff would have been able to conclude those matters at the college administrative level and factor their outcome and process into this lawsuit.

8. The complainant in the second Title IX complaint has graduated and has, apparently, made no effort to pursue the Title IX complaint despite the fact that it has now taken far longer than the sixty (60) days set forth in Rhodes' Title IX policy to pursue.

## III. LAW AND ANALYSIS

Federal Rule of Civil Procedure 65 establishes the relevant procedures for the granting of a preliminary injunction. Rule 65(a)(1) requires notice to the adverse party before a preliminary injunction is issued. *See* 13 MOORE'S FEDERAL PRACTICE, § 65.21 (Matthew Bender 3d ed.). Under the general notice provision of Rule 6(c)(1), at least 5 days' notice of a motion for preliminary injunction is required. *See* 1 Moore's Federal Rules Pamphlet § 65.3 (Matthew Bender). When considering a motion for preliminary injunction, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the injunction;
> (3) whether issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re De Lorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

### A. Strong Likelihood of Success on the Merits

#### a. Title IX Retaliation

Plaintiff is likely to succeed on the merits of his Title IX complaint. Title IX of the Education Amendments of 1972 provides that "[n]o person in the Unites States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20

U.S.C. § 1681(a). Plaintiff asserts that Rhodes' intentionally-delayed Title IX proceeding amounts to Retaliation and that it should be preliminarily and permanently enjoined from pursuing this proceeding or utilizing it as a basis to deny Plaintiff a degree.

Title IX prohibits sex discrimination by recipients of federal education funding, and it implies a private action for intentional sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 172 (2005). Furthermore, retaliation against an individual for complaining of sex discrimination is a form of intentional sex discrimination within the confines of Title IX. *Jackson*, 544 U.S. at 173; *Gomaz-Perez v. Potter*, 553 U.S. 474, 479 (2008). Title IX retaliation claims are analyzed by the Sixth Circuit using the same standards as Title VII retaliation claims. *Furh v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013). Using the burden-shifting framework set forth by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), the plaintiff has the burden of establishing a prima facie case of retaliation by demonstrating: "1) protected activity by the plaintiff; 2) knowledge by the defendant of the protected activity; 3) adverse school-related action; and 4) a causal connection between the protected activity and the adverse action." *Varlesi v. Wayne State University*, 909 F. Supp. 2d 827, 851 (E.D. Mich. 2012) (citing *Papelino v. Albany Coll. Of Pharm. Of Union Univ.*, 633 F.3d 81, 91-92 (2nd Cir. 2011). The adverse action need only be influenced by discriminatory retaliation. *Mur ay v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 251 (2d Cir. 1995) Applying the "influence of gender" standard from *Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994) to retaliation claims.).

As a preliminary matter the first three prongs of the *McDonnell Douglas/Burdine* analysis are met easily in this case. Plaintiff brought this lawsuit pursuant to Title IX alleging gender discrimination. That is *per se* protected activity. Service of the lawsuit upon the school necessarily

constitutes notice of the protected activity, and both the pursuit of a Title IX proceeding and the use of that proceeding to deny Plaintiff a degree constitute *per se* adverse school-related action. This leaves only the issue of causation.

In determining a prima facie case of retaliation, the Plaintiff has the burden of "put[ting] forth some evidence to deduce a causal connection between the retaliatory action and the protected activity." *A.C. v. Shelby Co. Bd. Of Ed.*, 711 F.3d 687, 699, 2013 U.S. App. LEXIS 6426, *30, 2013 FED App. 086P (6th Cir.), 16, 27 Am. Disabilities Cas. (BNA), 1339, 2013 WL 1285578 (citing *Nguyen v. City of Cleveland*, 299 F.3d 566, 563 (6th Cir. 2000). There must be evidence sufficient "to allow 'an inference . . . that the adverse action would not have been taken had the plaintiff' not engaged in protected activity . . . . [Temporal proximity] can often help meet this causal burden . . . and where the adverse action comes 'very close in time' after the exercise of protected activity, 'such temporal proximity . . . is significant enough' to meet the burden alone." *Id.* (citations omitted).

Should Plaintiff establish a *prima facie* case, a presumption of unlawful retaliation arises and the burden of production shifts to the defendant to rebut the presumption by "articulating some legitimate, nondiscriminatory reason for its action." *Fuhr* 710 F.3d at 674 (quoting *McDonnell Douglas*, 411 U.S. at 802). If a defendant successfully produces a legitimate reason, the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination. *Abbott*, 348 F.3d at 542.

Rhodes is unable to establish any legitimate reason for delaying and re-initiating these proceedings for the simple fact that the delay itself was a violation of federal law and Rhodes' own policies. 34 CFR states, in pertinent part:

(k)*Procedures for institutional disciplinary action in cases of alleged dating violence, domestic violence, sexual assault, or stalking.* As required by paragraph (b)(11)(vi) of this section, an institution **must** <u>include in its annual security report a clear statement of policy that addresses the procedures for institutional disciplinary action in cases of alleged dating violence, domestic violence, sexual assault, or stalking,</u> as defined in paragraph (a) of this section, and that -

. . .

(2) Provides that the proceedings will -

(i) Include a prompt, fair, and impartial process from the initial investigation to the final result;

. . .

(3) For the purposes of this paragraph (k) -

(i) A prompt, fair, and impartial proceeding includes a proceeding that is -

(A) Completed within reasonably prompt timeframes designated by an institution's policy, including a process that allows for the extension of timeframes for good cause with written notice to the accuser and the accused of the delay and the reason for the delay;[1]

. . .

(C) Conducted by officials who do not have a conflict of interest or bias for or against the accuser or the accused.

. . .

(iii)*Proceeding* means all activities related to a non-criminal resolution of an institutional disciplinary complaint, including, but not limited to, factfinding investigations, formal or informal meetings, and hearings.

. . .

(iv)*Result* means any initial, interim, and final decision by any official or entity authorized to resolve disciplinary matters within the institution. The result must include any sanctions imposed by the institution.

. . .

(m)*Prohibition on retaliation.* An institution, or an officer, employee, or agent of an institution, may not retaliate, intimidate, threaten, coerce, or otherwise discriminate against any individual for exercising their rights or responsibilities under any provision in this section. (emphasis added)

---

[1] Rhodes' Title IX policy sets this timeframe at sixty (60) days.

The Sixth Circuit noted earlier this year, in an unpublished opinion, that 34 CFR 668.46 is mandatory in nature. *Doe v. Univ. of Dayton*, No. 18-3339, 2019 U.S. App. LEXIS 7680, at *14-15 (6th Cir. Mar. 15, 2019)(not selected for full-text publication). Further, 34 CFR 668.46 is, on its face, mandatory, containing the imperative word "must" as it relates to the establishing procedures that conform to the remainder of the regulation. The with regard to the process employed, 34 CFR 668.46(k)(2) states "that the proceedings will . . . include a prompt, fair, and impartial process from the initial investigation to the final result." The regulation requires that for a process to be "prompt" it must be "[c]ompleted within reasonably prompt timeframes designated by an institution's policy." All of this language is mandatory. While *some* discretion is clearly left to the schools regarding the crafting of their policies, once those policies are in place, they are binding, and they cannot be altered or ignored arbitrarily. Finally, the regulation (and Rhodes' policy) provide for extension of the timeframes in writing, which was not done here.

This second Title IX allegation against Plaintiff was made on March 14, 2019 regarding an unrelated event that allegedly occurred on February 8, 2019. After rumors circulated about Plaintiff concerning the issues underpinning this lawsuit, the second complainant stated that "she felt obligated" to report. The Complainant Sharon[2] alleged that ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███ Defendant Rhodes College commenced an investigation of the complaint on March 29,

---

[2] Pseudonyms are used for all students of Rhodes College. Their identities are known to Defendant and can be provided to the Court.

2019 and completed it 12 days later.   Defendant did not pursue the second Title IX proceeding against Plaintiff beyond providing him a copy of the investigative report. <u>Critically, Rhodes never sent Plaintiff a charge letter, scheduled a formal or informal hearing, or issued any form of administrative resolution.</u> Defendant took no steps to complete this Title IX process despite the fact that under Rhodes' policies the existence of prior incidents of sexual misconduct can impact the sanctions for sexual misconduct in other Title IX proceedings. In other words, the outcome of the two proceedings could have been relevant to each other.

Rhodes said nothing further about the second Title IX proceeding and did not pursue it further until June 6, 2019, when, in "Defendant's Objection to Plaintiff's Application for Temporary Restraining Order and Injunction" and during oral argument, Defendant argued that Plaintiff was not entitled to a degree because even if all other considerations were put aside, the second Title IX complaint barred the award of said degree. Defendant's counsel asserted that due to the pendency of the first matter, the second matter was "placed on hold, cold turkey, stopped. . . ."[4]

---

[3] All direct references to the allegations are redacted and filed under seal to avoid embarrassment to the complainant should anyone be aware of her connection to Plaintiff.

[4] Neither Rhodes polices nor the federal regulations governing Title IX procedures make any provision for placing resolution of a matter on hold. In fact, both require a prompt resolution within the timeframe specified by the institution, absent written notice and good cause, which at Rhodes is 60 days from the complaint, which expired on May 28, 2019.

In the June 6, 2019 hearing, this Court asked the question "Why did they stop that? Just to see what happens here?" Rhodes' counsel's response was as follows:

> To ensure the lack of bias, to ensure the lack of infiltration from one case to another, to ensure that here is not character evidence infiltrating where a panel is making a wrong decision, hey, he must be a bad guy, therefore, even if I'm not sure on the first case, let's go ahead and expel him on the second case. That's what we're preventing against.

(Transcript of Proceedings, p. 41, June 6, 2019, ECF 32).

In the subsequent colloquy with the Court, Rhodes' counsel essentially admitted that Rhodes could not impartially manage two Title IX processes simultaneously:

> **THE COURT:** So, your hearing panels can't base a decision on the facts and the law in front of them? Is there that much of a chance that a new panel would be influenced by another proceeding?
>
> **MR. COHEN:** Your Honor, we don't want to bring two cases simultaneously involving two different victims and risk the due process argument that that cross-pollination has poisoned either or both resolutions. If someone is accused of committing two sexual assaults with two different testimonies, two different witnesses, two different fact patterns, two different points in time, the panel may not be sure on the first case. I mean you know that that's the argument that Mr. Timmons would make.
>
> **THE COURT:** I assume it's the same panel then?
>
> **MR. COHEN:** No, it would not be the same panel.
>
> **THE COURT:** So, it would be a different panel hearing a different case?
>
> **MR. COHEN:** Yes, it would.
>
> **THE COURT:** What about this cross-pollination you're talking about? Where does that occur if you have a different panel?
>
> **MR. COHEN:** It does not. That is exactly the due process protection we put in place. The second sexual assault case would be – we would need for that to go forward.
>
> **THE COURT:** I don't know why you stopped it in the first place; but, anyway, go ahead. I interrupted you.

> **MR. COHEN:** And I apologize if I wasn't clear. So I'll try to see if I can be more clear. The concern is that if -- it's a concern related to character evidence. Our proceedings do not allow character evidence. We don't want someone to be expelled, punished, disciplined in some way, shape, or form because he or she was a bad person or that someone could not have committed a sexual assault because he or she a good person. Our concern from a due process standpoint procedurally is that if we brought two cases simultaneously that there would be the potential for cross-pollination. I'm not sure about the first case. I think so in the second case. Gosh, two different women wouldn't be making the same allegation. Therefore, we expel him. We protect against that, and so we did bifurcate these two. We allowed the first hearing to go forward, and then if he was not cleared on the first hearing, then the second victim has her chance. That is an independent process from the first process.

(Id. at pp. 42-43.)

Rhodes has, in essence, taken the position that not only did it intentionally delay these proceedings in violation of its own policies and the regulatory requirements of Title IX, but that it cannot possibly conduct two proceedings impartially even when the members of a hearing panel should not know about the other proceeding. At this stage, this lawsuit has been reported in numerous local media outlets, including stories exclusively about this second complaint, completely devoid of any context. In effect, there is virtually no possibility that anyone involved in the Title IX program at Rhodes could have failed to hear that "two different women would be making the same allegation," despite the fact that the actual allegations were not made by two women and were not remotely similar. Rhodes has now waited to belatedly re-initiate this second proceeding only in direct response to Plaintiff's lawsuit. Rhodes has still not sent plaintiff a charge letter, made an informal resolution of the proceeding, nor has it set any form of hearing. In essence, Rhodes position is that the second Title IX process prevents Plaintiff from graduating while having, under its own argument, created a scenario in which it has not promptly resolved the complaint and could not conceivably do so impartially. Rhodes decision to improperly delay the

second Title IX process has rendered timely, unbiased resolution impossible and ensured that the only purpose in pursuing the second Title IX matter is retaliatory, not any legitimate purpose.

As demonstrated by the colloquy with the Court on June 6, Rhodes cannot "articulate some legitimate, nondiscriminatory reason for its action." *Fuhr*, 710 F.3d at 674. Even if, however, the delay itself were legitimate, it has created an environment so loaded with bias and so permeated by the effects of delay that it cannot possibly lead to the "prompt, fair, and impartial" proceeding contemplated under Title IX, and, at this point, any adverse outcome of such a proceeding would be, more likely than not, a mere pretext for perpetuating the gender discrimination that underpins this lawsuit.

  b. **Breach of Contract**

Rhodes Title IX policies also form a contract with its students. Rhodes breached its Title IX hearing policy in two critical ways. First, Rhodes failed to adhere to its timeline for resolution of the second Title IX complaint. Second, Rhodes did not make reasonable efforts to balance the rights of the parties involved in the complaint. Both of these breaches of contract have so irreparably harmed Plaintiff that only injunctive relief can provide him a remedy.

Courts have granted preliminary injunctions in cases in which a college or university has violated its own Title IX policy. See: *Roe v. Adams-Gaston*, No. 2:17-cv-00945 (S.D. Ohio Apr. 17, 2018); *Elmore v. Bellarmine Univ.*, 2018 U.S. Dist. LEXIS 52564 (W.D. Ky. Mar. 29, 2018); *Nokes v. Miami Univ.*, 2017 U.S. Dist. LEXIS 136880 (S.D. Ohio Aug. 25, 2017); *Doe v. Univ. of Notre Dame*, 2017 U.S. Dist. LEXIS 69645 (N.D. Ind. May 8, 2017); *Doe v. Weill Cornell Med. Coll. of Cornell Univ.*, No. 1:16-cv-03531 (S.D.N.Y. May 20, 2016); *Ritter v. Okla. City Univ.*, 2016 U.S. Dist. LEXIS 60193 (W.D. Okla. May 6, 2016); *Doe v. Brown Univ.*, 2016 U.S. Dist. LEXIS 191390 (D.R.I. April 25, 2016); *Doe v. Middlebury Coll.*, 2015 U.S. Dist.

LEXIS 124540 (D. Vt. Sept. 16, 2015); *King v. DePauw Univ.*, 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. Aug. 22, 2014); *Doe v. Geo. Wash. Univ.*, No. 1:11-cv-00696 (Apr. 8, 2011).

All of these courts have found the breach of contract claim sufficient basis to award preliminary injunctive relief. e.g. *Ritter* 2016 U.S. Dist. LEXIS 60193. Just as in this case, the *Ritter* Court addressed a situation in which a plaintiff sought injunctive relief barring adverse action by a private college following a flawed Title IX process. *Id*. at \*6-7. Ritter's allegations of gender discrimination were vague and non-specific, if founded in reasonable belief. *Id*. at \*6. The Court still found those allegations sufficient to warrant injunctive relief. *Id.*

Here, Rhodes has breached its contract in two critical and irredeemable ways. The first is that Rhodes did not complete its process within the sixty (60) day timeframe without meeting its contractual or federally-mandated requirement to notify him of an extension in writing. This has fundamentally prejudiced Plaintiff because he had to choose between bringing this lawsuit or waiting indefinitely for Rhodes to comply with its policy.

Plaintiff relied on his contractual agreement with Rhodes in delaying the filing of his lawsuit until sixty (60) days after the initiation of the second Title IX complaint. Plaintiff reasonably believed that by waiting until the sixty (60) day period had passed that no further Title IX issues that might be relevant to this litigation remained. Further, there was no reason for Rhodes to delay this process in any way. The two Title IX investigative reports were completed within a week of each other. A second hearing panel could have been convened before the outcome of the first Title IX process was even determined.

It is now a near certainty that everyone involved in the Title IX process at Rhodes is aware of precisely who Plaintiff is and that, through their deeply flawed process, he was found responsible under a previous Title IX process, a process that despite its total lack of any protections

akin to due process Rhodes seeks to defend. Second, Rhodes, by referencing this second Title IX complaint in a publicly-filed pleading, has ensured that the complaint has been reported in the local news media and heavily biased the pool of potential hearing panelists. In essence, Rhodes deferred resolution of the second Title IX complaint in a fashion that allowed it to backstop its woefully deficient process in the first Title IX proceeding with a second Title IX proceeding that it could raise in the event that Plaintiff challenged the outcome in this Court. Whether intentionally or through gross negligence, Rhodes should not be permitted to whitewash its deficient process by holding yet another hearing in which it can cast an arbitrary decision with a foregone conclusion as the mere exercise of reasonable discretion.

### B. **Irreparable Injury**

Plaintiff incorporates and reiterates his prior pleadings as to irreparable injury. Should Rhodes be permitted to repeat its faulty Title IX process, he will suffer the same loss of employment, reputation, and educational and other career opportunities, not readily compensable by money damages. *Ritter*, 2016 U.S. Dist. LEXIS 60193 at *8. In addition, however, Plaintiff has learned that he has sixty (60) days from the start date of his employment to ensure that his final transcripts reflecting his graduation have been transmitted to his employer or be discharged from employment. That places the final date for his employer to <u>receive</u> the transcripts at August 19, 2019.

### C. **Plaintiff's Injury Outweighs Harm to Others**

The potential harm that permitting Rhodes to pursue a second flawed Title IX process inflicts on Plaintiff well outweighs any harm to another. Permitting Plaintiff to graduate causes harm to no one. The complainant in the second Title IX investigation has graduated from Rhodes. Plaintiff does not seek to return to campus or otherwise have any contact with any Rhodes student

who does not wish to have contact with him. However, ample, heretofore discussed irreparable harm will occur if Plaintiff is wrongfully denied a degree, which he has earned over the last four years.

### D. Issuance of a Preliminary Injunction Will Serve the Public Interest

There simply exists no adverse public interest which would prevent the issuance of an injunction. It is "always in the public's interest that a student be treated fairly." Ritter, 2016 U.S. Dist LEXIS at *8. All universities must ensure that the rights afforded to students under Title IX are protected, including the rights of respondents to Title IX complaints. To deny a student an earned degree, especially when they are conditionally employed contingent on that degree, is to take a final step from which he or she is unlikely to recover. It is in the public interest to ensure that any such action is taken without bias or error.

### IV. Conclusion

Plaintiff's needs far outweigh any interest of the Defendant. Defendant's interest is merely in using a second Title IX process, rendered seriously defective by its own actions, to whitewash its previous unjustifiable denial of due process. If Plaintiff is not awarded the relief sought, he will lose his employment and be left in a position without educational and employment opportunities commensurate with his academic achievement.

Respectfully submitted,

/s/*Brice M. Timmons*
Brice M. Timmons (#29582)
Megan E. Arthur (#25243)
Black McLaren Jones Ryland
 & Griffee PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117
(901) 762-0535 (Office)
(901) 762-0539 (Fax)
marthur@blackmclaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's ECF system this 21st day of June, 2019 to all counsel who have made appearance in this matter.

                                                              /s/Brice M. Timmons