**In the Matter Of:**

*JOHN DOE vs*

*RHODES COLLEGE*

*2:19-cv-02336-JTF*

---

*MILTON MORELAND*

*July 15, 2019*

---



*1st in Reporting, 1st in Service, 1st in Technology*

We Bridge the State and Cover the Nation!

www.alphareporting.com

800-556-8974

**Milton Moreland - July 15, 2019**

```
 1              UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
 2                   WESTERN DIVISION
   _____
 3

 4   JOHN DOE,                )
                              )
 5                            )
           Plaintiff,         )
 6                            )
     VS.                      )          NO. 2:19-cv-02336-JTF
 7                            )
                              )
 8   RHODES COLLEGE,          )
                              )
 9                            )
                              )
10                            )
           Defendant.         )
11   _____

12
                         DEPOSITION
13
                             OF
14
                      MILTON MORELAND
15
                       JULY 15, 2019
16

17

18

19

20
                  Alpha Reporting Corporation
21                     236 Adams Avenue
                   Memphis, Tennessee 38103
22                      (901) 523-8974
                   www.alphareporting.com
23

24

25
```

**10**

1  you to go ahead and calculate those grades and tell
2  us what they would be hypothetically.  What steps
3  did you take to prepare to respond to that category
4  of questions?
5      A.  I -- I did read and understand the request,
6  and I'm prepared to talk about what his grade is and
7  the process by which we have calculated his grade.
8      Q.  Okay.  The second category, in the event
9  that the grade has been calculated, you would need
10  to have knowledge of the final actual grade.  Are
11  there any -- have any of those grades been
12  calculated?
13      A.  So just to clarify, are -- are you asking
14  what his grade -- what his final grade is, or just
15  whether the college has calculated and has given him
16  a final grade?
17      Q.  Whether the college has calculated the
18  grade, not whether it's given it to him or placed on
19  his transcript.
20      A.  The college has given him a grade based on
21  his status as a student -- as a --
22      Q.  That's not --
23      A.  -- interim suspended, so.
24      Q.  -- what I asked.  You placing a W on his
25  transcript has nothing to do with calculating a

12

1      MR. TIMMONS:  All right.  Let's make that

2  the next exhibit.

3      (WHEREUPON, THE ABOVE-MENTIONED DOCUMENT

4  WAS MARKED AS EXHIBIT NO. 2 TO THE TESTIMONY OF THE

5  WITNESS AND IS ATTACHED HERETO.)

6  BY MR. TIMMONS:

7    Q.  All right.  Let's move on to Paragraph 3 of

8  the Notice.  In the event that defendant claims that

9  plaintiff's final grades cannot be calculated

10  because he was not enrolled as a student at the time

11  of graduation, the designated witness, that's you,

12  should have knowledge of the information necessary

13  to calculate his final grades as though he had

14  hypothetically been enrolled as a student and

15  eligible to have his final grades calculated at the

16  time of graduation.

17      Did you take steps to prepare to answer

18  questions within that category?

19    A.  Yes.

20    Q.  Okay.  So if he had hypothetically, John Doe

21  hypothetically been enrolled as a student in good

22  standing at the time of graduation, what would his

23  grades have been in the three classes for which he

24  did not receive a grade?

25      MR. HALTOM:  I'm going to object to the

**Milton Moreland - July 15, 2019**

13

```
1   basis that hypothetical for information that is not
2   in the current custody or control of a party is not
3   obligated to be provided.  But Mr. Moreland can
4   provide whatever testimony he has available on the
5   topic.
6        MR. TIMMONS:  Okay.
7   BY MR. TIMMONS:
8     Q.  Go ahead and answer.
9     A.  As a interim suspended, suspended or
10  expelled student, his grade is automatically, as is
11  the longstanding practice of the college, calculated
12  as a W for withdrawn.
13    Q.  You're aware that's not the question, right?
14       MR. HALTOM:  I'm going to object.
15       MR. TIMMONS:  Okay.  You make your
16  objections.  This is a discovery deposition, you're
17  objection is noted, we'll let the Judge rule on them
18  at the time.
19       MR. HALTOM:  Well, please allow the
20  witness to finish his answer.  He was not yet
21  finished answering.
22       MR. TIMMONS:  I'm sorry, I thought you
23  were finished answering my question.  Are you not
24  finished?
25    A.  So from the college's perspective, the grade
```

**Alpha Reporting Corporation**

**Milton Moreland - July 15, 2019**

14

1   has been calculated.  As to whether if ordered and

2   the student is in good standing, grades could be

3   calculated.  I -- I don't have information about

4   that hypothetical.

5   BY MR. TIMMONS:

6       Q.  So what you're saying is that --

7       A.  But --

8       Q.  I'm sorry, I cut you off again.  Please go

9   ahead.

10      A.  I -- I think that as -- as faculty members

11  were allowing the student to continue to progress in

12  classes, that that's possible, indeed.  But

13  certainly not without the student being in good

14  standing with the college and we would request that

15  of the faculty member.

16      Q.  Okay.  Did you understand that the purpose

17  of Paragraph 3 was to ascertain what his numerical

18  grades would hypothetically be if he was a student

19  in good standing?

20          MR. HALTOM:  I'm going to object again,

21  and have a standing basis of objection --

22          MR. TIMMONS:  Can we skip the speaking

23  objection and just make your objections on the

24  record, please.

25          MR. HALTOM:  I'm go going instruct the

**Milton Moreland - July 15, 2019**

16

1   but that's not the intent.  Please continue if you

2   have a question for the witness.

3   BY MR. TIMMONS:

4      Q.  Did you understand that the purpose of

5   Paragraph 3 was to ascertain information about how

6   to calculate his grade numerically as if he were a

7   student in good standing.  Did you not understand it

8   that way?

9          MR. TIMMONS:  I'd like him to answer the

10  question.  If you want to make an objection, please

11  just object to the form.

12         MR. HALTOM:  I haven't even said anything,

13  so I'm surprised you're going to give me

14  instructions about what I can and can't do with

15  respect to objecting and to a question that you've

16  now ask.

17  BY MR. TIMMONS:

18     Q.  Can you answer that question?

19     A.  So you're asking whether the college could

20  hypothetically calculate a student's grade.

21     Q.  No.

22     A.  I -- I will say that's not our practice.

23     Q.  I'm not asking that.  I'm asking if you

24  understood the purpose of the third paragraph of

25  that Notice to be to obtain the underlying

**Milton Moreland - July 15, 2019**

17

1  information sufficient to calculate a grade as
2  though Mr. Doe were a student in good standing?
3      A.  I understand your question to be asking for
4  a hypothetical grade.  Yes.
5      Q.  All right.  I'd like you to look at
6  Paragraph 3, third line -- second to third line.
7  Where it says, the designated witness should have
8  knowledge of the information necessary to calculate
9  his final grades as though he had hypothetically
10 been enrolled as a student and eligible to have his
11 final grades calculated at the time of graduation.
12     A.  I see.
13     Q.  You understand that that paragraph seeks the
14 underlying information necessary to calculate the
15 grade?
16     A.  Yes, I -- so I will answer that I understand
17 how grades are calculated at Rhodes College.
18     Q.  Did you understand that the purpose of
19 Paragraph 3 says that it is to obtain the
20 information necessary to calculate a final grade?
21 Not the final grade itself.  Do you understand the
22 difference between the information necessary to
23 calculate the final grade and the final grade
24 itself?
25         MR. HALTOM:  I'm going to object on -- as

**Milton Moreland - July 15, 2019**

20

1  Q.  You understand I get to ask the questions,

2  right?

3  A.  Go for it.

4  Q.  You understand that you are obligated to

5  answer the questions to the best of your knowledge,

6  information, and belief, right?

7  A.  Yes.

8  Q.  Okay.  And are you telling me that despite

9  having reviewed this Notice in detail, that you did

10  not obtain the underlying information, underlying

11  numerical information necessary to calculate

12  Mr. Doe's grades in the three classes for which he

13  received a W, or did not receive a formal grade?

14  A.  A W is a formal grade.

15  Q.  Okay.  Would you please answer the question?

16  Did you obtain --

17       MR. HALTOM:  He answered the question.

18       MS. ARTHUR:  He did not answer --

19       MR. HALTOM:  He answered the question.  He

20  said a W is a formal grade.  I know you don't like

21  the answer, but that is his answer.

22       MR. TIMMONS:  Mr. Haltom, I'm going to ask

23  these questions, he's going to answer them or fail

24  to answer them.  But I have not gotten a yes or no

25  to my question:  Did you obtain the numerical

**Milton Moreland - July 15, 2019**

21

1  information necessary to calculate Mr. Doe's grades

2  in any of those three classes.

3          MR. HALTOM:  I'm going to object to

4  outside the scope of the subpoena.  There's nothing

5  that says anything in No. 3 about numerical grades.

6  BY MR. TIMMONS:

7      Q.  You can go ahead and answer it.  Did you

8  obtain -- let me rephrase this entirely.  Did you

9  obtain any numerical information about Mr. Doe's

10 grades in preparing for responding to this Notice?

11         MR. HALTOM:  I'm going to object to the

12 basis that it's outside the scope of the 30(b)(6).

13 BY MR. TIMMONS:

14     Q.  Just asking about the information obtained?

15 It's a yes or no question, did you?

16     A.  So for a hypothetical --

17     Q.  I'm not making a hypothetical.

18         MR. HALTOM:  Look, let him answer the

19 question.  If you ask him a question, let him finish

20 answering before you change the question.

21     A.  So I understand how student grades are

22 calculated.  Students in good standing are

23 calculated with parameters around letter grades, and

24 that includes numerical information.  Students who

25 are not in good standing, either having been

Milton Moreland - July 15, 2019

22

1  suspended, interim suspended, or expelled, we
2  calculate the grades as a W, which is withdrawn.
3  BY MR. TIMMONS:
4      Q.  I understand.
5      A.  There are -- there's -- there's no numerical
6  information that I needed to collect to understand
7  his grade as it is as a student who is not in good
8  standing.
9      Q.  So is the answer that no, you did not obtain
10  any numerical information about grades in order to
11  respond to this Notice?
12     A.  I guess the -- you're -- you're asking about
13  a hypothetical set of circumstances that don't
14  exist.
15     Q.  No, I'm asking --
16     A.  So I understand that I don't have to
17  calculate anything or collect anything on a
18  hypothetical.
19     Q.  You may think that's accurate.  The Court
20  may even ultimately agree with you.
21     A.  Okay.
22     Q.  What I am asking, however, is did you?
23          MR. HALTOM:  All right.  I'm going to ask
24  the court reporter if the same questions come out,
25  we're going to stop and we're going to ask how many

25

1      Q.   Okay.

2      A.   So I have tabulated the grade as a W, which

3  is the college's longstanding policy.   This student

4  has W's for withdrawn in the three classes as a

5  suspended or interim suspended or expelled student.

6      Q.   Okay.   And what you're saying is that you

7  are unwilling, not unable to, but unwilling to

8  calculate those grades so that the Court can know

9  what they would hypothetically be?

10          MR. HALTOM:   I'm going to instruct the

11  witness not to answer on the basis that the party is

12  not obligated to provide hypothetical information in

13  responding to discovery that does not exist at the

14  time it is -- it is requested.   And the witness has

15  testified that the student has received a grade of W

16  and that he is not in good standing.   And so, I'm

17  going to instruct him not to answer that question.

18          MR. TIMMONS:   Okay.   What's your legal

19  basis for instructing him not to answer?

20          MR. HALTOM:   That it is not obligated

21  under Rule 34(a) and sufficient Tennessee and

22  Federal case law, which I'm glad -- on the citation

23  on here on, that he's not obligated to produce

24  information that does not exist at the time it is

25  requested.   And at this time, Mr. Doe is -- has

32

1  grades could be calculated by various faculty

2  members if the Court were to order you to do that,

3  right?

4      A.  I -- I think that's true based on my

5  knowledge of typical faculty members at Rhodes

6  College.

7      Q.  Okay.  But as we sit here today, you are not

8  prepared to do so; is that correct?

9          MR. HALTOM:  Object to form.

10 BY MR. TIMMONS:

11     Q.  And feel free to explain your reasons.  I

12 understand that you may have perfectly justifiable

13 reasons for that.  But as we sit here today, you are

14 not prepared to calculate or provide a calculation

15 of any of his numerical grades; is that correct?

16     A.  Based on the fact that the student is

17 interim suspended at the college, I know that his

18 grade has been tabulated or calculated as a W, which

19 stands for withdrawn.

20     Q.  I understand.

21     A.  So with regard to what we know, no

22 hypotheticals, but what his status is and what the

23 college does for -- by virtue of its policies and

24 procedures, his grade, in fact, has been calculated

25 as a W.  And that happens with every student who is

**Milton Moreland - July 15, 2019**

43

```
1                    C E R T I F I C A T E

2   STATE OF TENNESSEE     )
                           )
3   COUNTY OF SHELBY       )

4
            I, SHERI ALLEN, LCR #492, Licensed Court
5   Reporter, in and for the State of Tennessee, do
    hereby certify that the above deposition was
6   reported by me, and the transcript is a TRUE and
    accurate record to the best of my knowledge, skills,
7   and ability.

8           I further certify that I am not related to
    nor an employee of counsel or any of the parties to
9   the action, nor am I in any way financially
    interested in the outcome of this case.

10
            I further certify that I am duly licensed by
11  the Tennessee Board of Court Reporting as a Licensed
    Court Reporter as evidenced by the LCR number and
12  expiration date following my name below.

13          I further certify that this transcript is
    the work product of this court reporting agency and
14  any unauthorized reproduction and/or transfer of it
    will be in violation of Tennessee Code Annotated
15  39-14-104, Theft of Services.

16

17  _____

18                    Sheri Allen, LCR #492
                      Expiration Date 6-30-2020
19                    ALPHA REPORTING CORPORATION
                      236 Adams Avenue
20                    Memphis, Tennessee 38103

21

22

23

24

25
```

**Alpha Reporting Corporation**